UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                                   CASE NO. 8:14-cv-1155-T-23TGW

NPB ADVERTISING, INC., et al.,

     Defendants.

_____/

## ORDER

     The Federal Trade Commission (FTC or Commission) sued under Section 13(b) of the Federal Trade Commission Act (FTC Act).  The FTC and NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; Sermo Group, LLC; Signature Group, LLC; Paul Daniel Pascual; Bryan Benjamin Walsh; and CPW Funding, LLC, (collectively, Settling Defendants) stipulate to and move (Doc. 43) for the entry of a permanent injunction and a judgment "to resolve all matters in dispute in this action between them."  (Doc. 43-1 at 2)

     The motion (Doc. 43) is **GRANTED**.  The clerk is directed to enter a judgment for the FTC and against the Settling Defendants in accord with this order. This action continues against Nicholas Scott Congleton and Dylan Craig Loher, who

are not parties to the stipulation.  In accord with the stipulation, the Settling

Defendants are enjoined as follows:

## DEFINITIONS

In this order, the following definitions apply:

A.  "Adequate and Well-Controlled Human Clinical Testing" means human clinical studies that are randomized, double-blind, and placebo-controlled and that are conducted by Persons qualified by training and experience to conduct such studies.

B.  "Affiliate Marketer(s)" means any Person, including third-party marketers, who participates in an Affiliate Program.

C.  "Affiliate Network(s)" means any Person who provides another Person with Affiliate Marketers for an Affiliate Program or whom any Person contracts with as an Affiliate Marketer to promote any products, services, or programs.

D.  "Affiliate Program(s)" means:

1.      Any arrangement under which any marketer or seller of a product, service, or program pays, offers to pay, or provides or offers to provide any form of consideration to any Defendant, either directly or through an Affiliate Network, to:

a)      Provide the marketer or seller with, or refer to the marketer or seller, potential or actual customers; or

b)      Otherwise market, advertise, or offer for sale the product, service, or program on behalf of the marketer or seller; or

2.      Any arrangement under which any Defendant pays, offers to pay, or provides or offers to provide any form of

consideration to any third party, either directly or through an Affiliate Network, to:

> a)      Provide any Defendant with, or refer to any Defendant, potential or actual customers; or

> b)      Otherwise market, advertise, or offer for sale any product, service, or program on behalf of any Defendant.

E.  "Assisting Others" includes:

1.      Arranging for the dissemination or publication of advertisements;

2.      Assisting in the formulation, drafting, or revision of advertisements;

3.      Creating, hosting, or maintaining websites, including, but not limited to, funding the domain registration thereof;

4.      Recruiting third parties to advertise or market products, services, or programs;

5.      Obtaining or generating customer leads;

6.      Performing or providing marketing, billing or collection services of any kind;

7.      Verifying, processing, fulfilling, or arranging for the fulfillment of orders; or

8.      Acting as an officer, director, or managing member of a business entity.

F.  "Clearly and Prominently" means:

1.      In textual communications (e.g., printed publications or words displayed on the screen of an

- 3 -

electronic device), the disclosure must stand out from the accompanying text and be of a type size and location sufficiently noticeable for an ordinary customer to read and comprehend the disclosure, in print that contrasts with the background on which it appears.

2.     In communications disseminated orally or through audible means (e.g., radio or streaming audio) the disclosure must be delivered in a volume and cadence sufficient for an ordinary customer to hear and comprehend the disclosure.

3.     In communications disseminated through video means (e.g., television or streaming video), the disclosure must be in writing in a form consistent with Subsection (1) of this definition and must appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend the disclosure.

4.     In communications made through the Internet and other web-based applications or services:

    a)     The disclosure must be unavoidable and presented in a form consistent with Subsection (1) of this definition in addition to any audio or video presentation of it; and

    b)     The disclosure must be on the same web page, online service page, or other electronic page, in Close Proximity to the triggering representation.

5.     In communications that contain both audio and visual portions, the disclosure must be presented simultaneously in both the audio and visual portions of the communication. In communications presented solely through visual or audio means, the disclosure must be made through the same means in which the communication is presented.

- 4 -

6.    In all instances, the disclosure must be presented prior to the consumer incurring any financial obligation, in understandable language and syntax, in the same language as the predominant language that is used in the communication, and with nothing contrary to, inconsistent with, or in mitigation of the disclosure used in any communication with the consumer.

G. "Close Proximity" means on the same print page, web page, or other electronic page, and proximate to the triggering representation, and not accessed or displayed through hyperlinks, pop-ups, interstitials, or other means.

H. "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

I. "Corporate Defendants" means all of the following, individually, collectively, or in any combination: NPB Advertising, Nationwide Ventures, Olympic Advertising, JMD Advertising, Sermo Group, and Signature Group.

J. "CPW Loan Agreements" means all of the following documents, individually and collectively, concerning a loan from CPW Funding to HBC Investments, LLC:

1.    Modification of Note, Security Agreement and Pledge, dated on or about September 9, 2015, between HCB Investments, LLC, and CPW Funding (2015 Modification);

2.    Settlement Agreement, dated on or about September 9, 2015, between HCB Investments, LLC, and CPW Funding (2015 Loan Settlement);

3.    Promissory Note made by HCB Investments, LLC, in favor of CPW Funding and Acceptance, dated on or about July 12, 2013, a copy of which was produced to the parties at BPASCUAL-FTC-0000065-71 (Promissory Note);

4.      Modification of Promissory Note made by HCB Investments, LLC in favor of CPW Funding and Acceptance, dated on or about September 3, 2014, a copy of which was produced to the parties at BPASCUAL-FTC-0000046-47 (2014 Modification);

5.      Security Agreement, dated on or about July 12, 2013, between HCB Investments, LLC, and CPW Funding, a copy of which was produced to the parties at BPASCUAL-FTC-0000073-82 (Security Agreement); and

6.      Pledge Agreement between HCB Investments, LLC, its members, and CPW Funding, together with the Conditional Assignments and Conditional Voting Proxy, dated on or about July 12, 2013, a copy of which was produced to the parties at BPASCUAL-TC-0000050-63 (Pledge Agreement).

K.  "Defendants" means all of the following, individually, collectively, or in any combination:

1.      Defendant NPB Advertising, Inc., a corporation, and also d/b/a Pure Green Coffee, and which also has conducted business as Bungo Media, Quest Laboratories GreenCoffee8884963810, and Nation Wide Ventures, and its successors and assigns (NPB Advertising);

2.      Defendant Nationwide Ventures, LLC, a limited liability company, which also has conducted business as Nation Wide Ventures, LLC, Pure Green Coffee, Bungo Media, and Quest Laboratories, and its successors and assigns (Nationwide Ventures);

3.      Defendant Olympus Advertising, Inc., a corporation, which also has conducted business as egreencoffeeextract and GRNCOFEXTRCT8887459754 and its successors and assigns (Olympus Advertising);

4.      Defendant JMD Advertising, Inc., a corporation, which also has conducted business as

- 6 -

EGreenCoffe8887397098 and E Green Coffee Diet, and its successors and assigns (JMD Advertising);

5.      Defendant Sermo Group, LLC, a limited liability company, and its successors and assigns (Sermo Group);

6.      Defendant Signature Group, LLC, a limited liability company; and its successors and assigns (Signature Group);

7.      Defendant Paul Daniel Pascual, a/k/a Mike Jackson, individually and as an owner and managing member of NPB Advertising, Inc., Nationwide Ventures, LLC, Olympus Advertising, Inc., JMD Advertising, Inc., and Signature Group, LLC (Pascual);

8.      Defendant Bryan Benjamin Walsh, a/k/a Mike Jackson, individually and as an owner, officer, and managing member of NPB Advertising, Inc., Olympus Advertising, Inc., and JMD Advertising, Inc., and as an owner and managing member of Nationwide Ventures, LLC, and Signature Group, LLC (Walsh);

L.  "Device" means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including and component, part, or accessory, which is:

1.      Recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them;

2.      Intending for use in the diagnosis of disease or other condition, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals; or

3.      Intending to affect the structure or any function of the body of man or other animals;

and which does not achieve any of its principal intended purposes through chemical action within or on the body of man

or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

M.   "Dietary Supplement" means:

1.     Any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or

2.     Any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb, or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

N.   "Drug" means:

1.     Articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

2.     Articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease of man or other animals;

3.     Articles (other than food) intended to affect the structure or any function of the body of man or other animals; and

4.     Articles intended for use as a component of any article specified in clause 1, 2, or 3 above; but does not include Devices or their components, parts, or accessories.

O.  "Endorsement" means, as defined in 16 C.F.R. § 255.0(b), any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness, or other identifying personal characteristics of an individual or the name or seal of an organization) that customers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser.

P.  "Essentially Equivalent Product" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Dietary Supplement, Food, or Drug; provided that the Dietary Supplement, Food, or Drug may contain additional ingredients if reliable scientific evidence generally accepted by experts in the relevant field indicates that the amount and combination of additional ingredients are unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

Q.  "Food" means, as defined in Section 15 of the FTC Act, 15 U.S.C. § 55:

    1.  Articles used for food or drink for man or other animals;

    2.  Chewing gum; and

    3.  Articles used for components of any such article.

R.  "Including" means including without limitation.

S.  "Individual Defendants" means both of the following, individually, collectively, or in any combination: Pascual and Walsh.

T.  "Material Connections" means any relationships that materially affect the weight or credibility of any Endorsement and that would not reasonably be expected by consumers.

U.  "Person" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

V.  "Pure Green Coffee" means any Dietary Supplement, Food, or Drug, sold alone or in combination with companion products, that is advertised, marketed, promoted, offered for sale, distributed, or sold with express or implied representations that the product contains green coffee or the extract thereof.

W.  "Reliably Reported," for a human clinical test or study (test), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

X.  "Relief Defendant" means CPW Funding, LLC, a limited liability company, and its successor and assigns (CPW Funding).

## I. PROHIBITED REPRESENTATIONS: WEIGHT-LOSS CLAIMS

Defendants, Defendant's officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any Dietary Supplement, Food, or Drug, are hereby permanently restrained and enjoined from making, or Assisting Others in making, directly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, any representation that such Dietary Supplement, Food, or Drug:

A.   Causes, or assists in causing, weight loss, fat loss, or any specific amount of weight loss or fat loss;

B.   Causes, or assists in causing, rapid weight loss or fat loss;

C.   Causes, or assists in causing, substantial weight loss or fat loss; or

D.   Consumers who use such Dietary Supplement, Food, or Drug can generally expect to achieve the weight loss or fat loss results represented by an endorser of such Dietary Supplement, Food, or Drug;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that substantiates that the representation is true.  For purposes of this Section, competent and reliable scientific evidence consists of Adequate and Well-Controlled Human Clinical Testing of the Dietary Supplement, Food, or Drug, or of an Essentially Equivalent Product, that conforms to acceptable designs and protocols, and which is sufficient in quality and quantity, based on standards generally accepted by experts in weight loss, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Defendants have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.  In addition, all underlying or supporting data and documents generally accepted by experts in weight loss as relevant to an assessment of such testing as described in the Section entitled

Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.

## II. PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any Dietary Supplement, Food, Drug, or Device, are hereby permanently restrained and enjoined from making, or Assisting Others in making, directly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, any representation, other than representations covered under Section I of this order, for any Dietary Supplement, Food, Drug, or Device about the health benefits, performance, or efficacy of such Dietary Supplement, Food, Drug, or Device, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by qualified Persons; (2) that are generally accepted in the profession to yield accurate and reliable results; and (3) as to which, when they are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies are available for inspection and production to the Commission.

## III. PROHIBITED REPRESENTATIONS: NON-HEALTH RELATED CLAIMS

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any product, service, or program that is not a Dietary Supplement, Food, Drug, or Device, are hereby permanently restrained and enjoined from making, or Assisting Others in making, directly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, any representation regarding the benefits, performance, or efficacy of any such product, service, or program unless the representation is non-misleading, and, at the time of

making such representation, Defendants possess and rely upon competent and

reliable evidence that substantiates that the representation is true. For purposes of

this Section, competent and reliable evidence means tests, analyses, research, studies,

surveys, or other evidence based on the expertise of professionals in the relevant area,

that have been conducted and evaluated in an objective manner by individuals

qualified to do so, using procedures generally accepted in the profession to yield

accurate and reliable results.

## IV. PROHIBITED REPRESENTATIONS: ALL PRODUCTS, SERVICES, OR PROGRAMS

Defendants, Defendants' officers, agents, employees, and attorneys, and all

other Persons in active concert or participation with any of them, who receive actual

notice of this order, whether acting directly or indirectly, in connection with the

manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or

distribution of any product, service, or program, are hereby permanently restrained

and enjoined from:

> A.   Misrepresenting, or Assisting Others in misrepresenting, any
> material fact, directly or by implication, including:

>> 1.   That any website or other publication is an
>> objective news report;

>> 2.   That objective news reporters have performed
>> independent tests of any product, service, or program;

3.      That comments posted on a website express the views of independent consumers;

4.      The total cost to purchase, receive, or use the product, service, or program;

5.      Any material restrictions, limitations, or conditions to purchase, receive, or use the product, service, or program;

6.      Any material aspect of the performance, efficacy, nature, or central characteristics of the report, service, or program;

7.      Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the product, service, or program;

B.    Failing to disclose, Clearly and Prominently, in Close Proximity to the triggering representation:

1.      For any Endorsement of the product, service, or program, all Material Connections between the Person providing the Endorsement and the Defendants or any other Person manufacturing, labeling, advertising, marketing, promoting, offering for sale, selling, or distributing such product, including whether the endorser has been paid or promised payment, directly or indirectly, to use the product, service, or program or to convey the Person's opinions, findings, beliefs, or experience regarding such product, service, or program;

2.      For any representation that any test or study supports any claims about the benefits, performance, or efficacy of the product, service, or program, all Material Connections with any Person who has conducted, authored, or participated in the test or study; and

3.      For any representation that any test or study supports any claims about the benefits, performance, or efficacy of the product, service, or program, all Material

Connections with any Person who has conducted, authored, or participated in the test or study; and

C.   Misrepresenting that consumers who use such product, service, or program can generally expect to achieve the results represented by an endorser of such product, service, or program.

## V. PROHIBITED REPRESENTATIONS: TESTS OR STUDIES

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any Dietary Supplement, Food, Drug, or Device, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, directly or by implication, including through the use of any product name or Endorsement:

A.   The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; or

B.   That the benefits of such Dietary Supplement, Food, Drug, or Device are scientifically proven.

## VI. FDA APPROVED CLAIMS

Nothing in this order prohibits Defendants from:

A.   Making any representation for any Drug that is permitted in labeling for such Drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under

any new Drug application approved by the Food and Drug
Administration; and

B.   Making any representation for any product that is specifically
permitted in labeling for such product by regulations
promulgated by the Food and Drug Administration pursuant to
the Nutrition Labeling and Education Act of 1990 or permitted
under Sections 303-304 of the Food and Drug Administration
Modernization Act of 1997.

## VII. PROHIBITED CONDUCT: AFFILIATE MARKETING

Defendants, Defendants' officers, agents, employees, and attorneys, and all

other Persons in active concert or participation with any of them, who receive actual

notice of this order, whether acting directly or indirectly, in connection with the

manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or

distribution of any products, services, or programs through an Affiliate Program,

must:

A.   Require each Affiliate Marketer and Affiliate Network used
in any Affiliate Program to provide to Defendants the following
identifying information:

1.   In the case of a natural Person, the Affiliate
Marketer's or Affiliate Network's first and last name,
physical address, country, telephone number, e-mail
address, and complete bank account information as to
where payments are to be made to that Person;

2.   In the case of a business entity that is a direct
Affiliate Marketer with Defendants, the Affiliate
Marketer's name and any and all names under which it
does business, state of incorporation, registered agent,
and the first and last name, physical address, country,
telephone number, and e-mail address for at least one

natural Person who owns, manages, or controls the
Affiliate Marketer, and the complete bank account
information as to where payments are to be made to the
Affiliate Marketer;

3.      In the case of a business entity that is an Affiliate
Network, the Affiliate Network's name and any and all
names under which it does business, state of
incorporation, registered agent, and the first and last
name, physical address, country, telephone number, and
e-mail address for at least one natural person who owns,
manages, or controls the Affiliate Network, and the
complete bank account information as to where
payments are to be made to the Affiliate Network; and

4.      If Defendants have access to certain Affiliate
Marketers only through an Affiliate Network, then
Defendants must contractually require each such
Affiliate Network to obtain from those Affiliate
Marketers and maintain the identifying information set
forth in Subsections A.1 and A.2 of this Section prior to
the Affiliate Marketer's or Affiliate Network's
participation in any Defendant's Affiliate Program.

B.   As a condition of doing business with any Affiliate Marketer
or Affiliate Network or such Affiliate Marketer or Affiliate
Network's acceptance into any Defendant's Affiliate Program:

1.      Provide each such Affiliate Marketer or Affiliate
Network a copy of this order;

2.      Obtain from each such Affiliate Marketer or
Affiliate Network a signed and dated statement
acknowledging receipt of this order and expressly
agreeing to comply with this order; and

3.      Clearly and Prominently disclose in writing that
engaging in acts or practices prohibited by this order will
result in immediate termination of any Affiliate
Marketer or Affiliate Network and forfeiture of all
monies owed to such Affiliate Marketer or Affiliate

Network; provided, however, that if Defendants have access to certain Affiliate Marketers only through an Affiliate Network, then Defendants must contractually require that such Affiliate Network provide the information required by this Subsection to each of those Affiliate Marketers and retain proof of the same prior to any such Affiliate Marketer being used in any Defendant's Affiliate Program; and if any Defendants should acquire an entity that has an existing program of selling through Affiliate Marketers, the entity must complete all steps in this Subsection prior to Defendant's acquisition of the entity.

C.   Require that each Affiliate Marketer or Affiliate Network, prior to the public use or dissemination to consumers of any marketing materials, including, websites, e-mails, and pop-ups used by that Affiliate Marketer or Affiliate Network to advertise, promote, market, offer for sale, or sell any products, services, or programs through any Defendant's Affiliate Program, provide that Defendant with the following information:

    1.   Copies of marketing materials to be used by the Affiliate Marketer or Affiliate Network, including text, graphics, video, audio, and photographs;

    2.   Each location the Affiliate Marketer or Affiliate Network maintains, or directly or indirectly controls, where the marketing materials will appear, including the URL of any website; and

    3.   For hyperlinks contained within the marketing materials, each location to which a consumer will be transferred by clicking on the hyperlink, including the URL of any website. Defendants also must require each Affiliate Marketer or Affiliate Network to maintain and provide to Defendants upon request records of the dates when the marketing materials are publicly used or disseminated to consumers.

Provided, however, that if Defendants have access to certain Affiliate Marketers only through an Affiliate Network, then

- 19 -

Defendants must contractually require that the Affiliate Network obtain and maintain the same information set forth above from each of those Affiliate Marketers who are part of any Defendant's Affiliate Program prior to the public use or dissemination to consumers of any such marketing materials, and provide proof to such Defendant of having obtained the same.

D.   Promptly review the marketing materials specified in Subsection C above of this Section as necessary to ensure compliance with this order. Defendants must also promptly take steps as necessary to ensure that the marketing materials provided to Defendants under Subsection C above of this Section are the marketing materials publicly used or disseminated to consumers by the Affiliate Marketer or Affiliate Network. If a Defendant determines that use of any marketing materials does not comply with this order, such Defendant must inform the Affiliate Marketer or Affiliate Network in writing that approval to use such marketing materials is denied and must not pay any amounts to the Affiliate Marketer or Affiliate Network for such marketing, including any payments for leads, "clickthroughs," or sales resulting therefrom. Provided, however, that if Defendants have access to certain Affiliate Marketers only through an Affiliate Network, then Defendants must contractually require that the Affiliate Network comply with the procedures set forth in this Subsection as to those Affiliate Marketers.

E.   Promptly investigate any complaints that any Defendant receives through any source to determine whether any Affiliate Marketer or Affiliate Network is engaging in acts or practices prohibited by this order, either directly or through any Affiliate Marketer that is part of any Defendant's Affiliate Marketer program.

F.   Upon determining that any Affiliate Marketer or Affiliate Network has engaged in, or is engaging in, acts or practices prohibited by this order, either directly or through any Affiliate Marketer that is part of any Defendant's Affiliate Program, immediately:

    1.   Disable any connection between the Defendant's Affiliate Program and the marketing materials used by

the Affiliate Marketer or Affiliate Network to engage in such acts or practices prohibited by this order;

2.     Halt all payments to the Affiliate Marketer or Affiliate Network resulting from such acts or practices prohibited by this order; and

3.     Terminate the Affiliate Marketer or Affiliate Network; provided, however, Defendants will not be in violation of this subsection if they fail to terminate an Affiliate Network in a case where Defendants' only access to an Affiliate Marketer who has engaged in acts or practices prohibited by this order is through an Affiliate Network and the Affiliate Network immediately terminates the Affiliate Marketer violating this order from any Affiliate Program maintained by any Defendant.

## VIII. MONETARY JUDGMENT

A.   A judgment of Thirty Million Dollars ($30,000,000) is entered in favor of the Commission against Defendants and Relief Defendant, jointly and severally, which the parties stipulate only for purposes of this Section represents consumer injury and disgorgement alleged in the Complaint.

B.   Defendants are ordered to pay to the Commission One Hundred Sixty Thousand, Eight Hundred Dollars ($160,800), which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within seven calendar days of entry of this order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission. Upon such payment and all other assets transfers and payments specified in Subsection C, and D, E, and F of this Section, the remainder of the judgment is suspended subject to the conditions set forth in Subsections G, H, and I of this Section and Section IX of this order

C.   Walsh must take the steps set forth below to sell all interest in the 2006 Ford Crown Victoria with the VIN 2FAHP71W46X134956 (Crown Victoria) listed on the financial statements provided to the Commission:

1.   Walsh must immediately place the Crown Victoria for sale through an appropriate broker or listing service at the direction of the Commission.

2.   Walsh must notify counsel for the Commission of the amount of any offer to purchase the Crown Victoria immediately upon receiving such offer. Acceptance of any such offer must be in the Commission's sole discretion.

3.   Within five calendar days of receipt of net proceeds from the sale of all interest in the Crown Victoria, Walsh must transfer such net proceeds to the Commission by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

4.   Prior to the sale required by this Section, Walsh must maintain insurance on the Crown Victoria in an amount of not less than the full replacement value of the vehicle. In the event that the Crown Victoria suffers any loss or damage covered by such insurance policy, Walsh must make such claims as the insurance policy permits and must assign or remit to the Commission the remainder of any insurance payments Walsh receives as a result of such loss or damage after paying the cost to repair said loss or damage.

D.   Within five calendar days of entry of this order, Walsh must sell, at fair market value, all interest in the 5.6 shares in Spectra Energy Corp. (stock shares) listed on the financial statements. Within five calendar days of the stock sales, Walsh must transfer the net proceeds of the sales to the Commission by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

E.   Within five calendar days of entry of this order, Walsh must sell, on a public exchange at fair market value, all interest in the Bitcoin cryptocurrency listed on the financial statements. Within five calendar days of this sale, Walsh must transfer the net proceeds of the sale to the Commission by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

F.   Collection and Transfer of Principal and Interest Owed to Relief Defendant CPW Funding.

1.   Relief Defendant must immediately assign to Individual Defendants all of CPW Funding's right, title, and interest with regard to each of the CPW Loan Agreements, including the existing loan from Relief Defendant to HCB Investments, LLC, (Maker) and the rights and remedies for enforcement and collection thereof as set out therein. Relief Defendant and Individual Defendants must execute all documents and perform any other act necessary to effect these assignments.

2.   The 2015 Modification provides that the Maker must pay CPW Funding a total of Three Hundred Five Thousand, Seven Hundred Sixty Dollars and Eighty-Three Cents ($305,760.83), with payments to be made in four installments. As of entry of this order, Defendants represent that the Maker has paid them One Hundred Fifty Thousand Dollars ($150,000) in accord with the 2015 Modification, with an outstanding balance of One Hundred Fifty-Five Thousand, Seven Hundred Sixty Dollars and Eighty-Three Cents ($155,760.83).

3.   Upon receipt of any funds from the Maker, whether through the installment plan provided in the 2015 Modification or otherwise, Individual Defendants must transfer such funds to the Commission within seven calendar days by electronic fund transfer in accord with instructions previously provided by a representative of the Commission.

4.    Upon the failure of the Maker to make any of the scheduled payments set out in the 2015 Modification in the full amount and at the time specified therein, Individual Defendants will take all necessary steps against the Maker to enforce and collect in full on the Promissory Note and 2014 Modification as secured through the Security Agreement and Pledge Agreement. These steps include: (1) attaching and perfecting security interests set out in the Security Agreement and Pledge Agreement; (2) taking all reasonable steps to ensure that the Maker makes no distribution to its owners, including salaries, until the principal and accrued interest are paid in full; and (3) if necessary, instituting and prosecuting an appropriate action against the Maker, which action must be at their expense and will not reduce the amount owed to the Commission.

5.    Individual Defendants must create and maintain a monthly report of their collection activities that details: all actions taken to collect on the Maker; all funds received; and the disposition of all funds received and must provide a copy to counsel for the Commission for each thirty-day calendar period after entry of this order until such time as the full amount owed under the CPW Loan Agreements has been paid in full. This accounting must be provided no later than the seventh calendar day after the thirty day calendar period that the accounting covers has ended.

6.    Individual Defendants' and Relief Defendant's obligations under this Section are not satisfied until and unless the Commission receives the full balance owed under the CPW Loan Agreements, including the One Hundred Fifty-Five Thousand, Seven Hundred Sixty Dollars and Eighty-Three Cents ($155,760.83) indicated above and, in the case of any default or failure to perform by the Maker under the 2015 Modification, any subsequently accrued interest or penalties.

G.    The Commission's agreement to the suspension of the remainder of the Thirty Million Dollar ($30,000,000) judgment is

- 24 -

expressly premised upon the truthfulness, accuracy, and completeness of Defendants' and Relief Defendant's sworn financial statements and attachments thereto submitted to the Commission, and of the deposition testimony of Individual Defendants in this matter (collectively, financial representations) namely:

1. The Corporate Financial Statements of:

    a) NPB Advertising, signed by Walsh, officer, on October 28, 2015;

    b) Nationwide Ventures, signed by Pascual, president and managing member, on October 28, 2015;

    c) Olympus Advertising, signed by Walsh, officer, on October 28, 2015;

    d) JMD Advertising, signed by Walsh, officer, on October 28, 2015;

    e) Sermo Group, signed by Shyamie Dixit, Esq., counsel, on October 28, 2015;

    f) Signature Group, signed by Walsh, managing member, on October 28, 2015; and

    g) CPW Funding, signed by Walsh, managing member, on October 28, 2015;

including the attachments to each.

2. The individual financial statements of Pascual, signed October 28, 2015, and Walsh, signed October 28, 2015, including the attachments to each.

3. The deposition testimony of Pascual, taken on February 11, 2015, and Walsh, taken on June 4, 2015, including the exhibits to each.

H.   The suspension of the judgment will be lifted as to any Defendant or Relief Defendant if, upon motion by the Commission, the Court finds that such Defendant or Relief Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

I.   If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant or Relief Defendant in the amount specified in Subsection A above, which the parties stipulate only for purposes of this Section represents consumer injury and disgorgement, less any payment previously made pursuant to this Section or made pursuant to any judgment entered in this action against any other defendants named in the First Amended Complaint, plus interest computed from the date of entry of this order.

## IX. ADDITIONAL MONETARY PROVISIONS

A.   Defendants and Relief Defendant relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this order and may not seek the return of any assets.

B.   The facts alleged in the First Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation against Defendants or Relief Defendant by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this order, such as a non-dischargeability complaint in any bankruptcy case.

C.   Defendants and Relief Defendant acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants and Relief Defendant previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this order, in accordance with 31 U.S.C. § 7701.

D.   All money paid to the Commission pursuant to this order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the First Amended Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## X. CUSTOMER INFORMATION

Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, are permanently restrained and enjoined from directly or indirectly disclosing, using, or benefitting from customer information, including the name, address, telephone number, e-mail address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this order in connection with the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of Pure Green Coffee.

Further, Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, must:

A.   Provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the Commission. If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within fourteen calendar days.

B.   Destroy such customer information in all forms in their possession, custody, or control within thirty calendar days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XI. CO-OPERATION

Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Defendants must provide truthful and complete information, evidence, and testimony. Individual Defendants must appear and Corporate Defendants and Relief Defendant must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably

request upon five calendar days written notice, or other reasonable notice, at such

places and times as a Commission representative may designate, without the service

of a subpoena.

## XII. PRESERVATION OF RECORDS RELATING TO COMPETENT AND

## RELIABLE HUMAN CLINICAL TESTS OR STUDIES

With regard to any human clinical test or study (test) upon which Defendants

rely to substantiate any claim covered by this order, Defendants must secure and

preserve all underlying or supporting data and documents generally accepted by

experts in the field as relevant to an assessment of the test, including, but not

necessarily limited to:

A.   All protocols and protocol amendments, reports, articles,
write-ups, or other accounts of the results of the test, and drafts of
such documents reviewed by the test sponsor or any other person
not employed by the research entity;

B.   All documents referring or relating to recruitment;
randomization; instructions, including oral instructions, to
participants; and participant compliance;

C.   Documents sufficient to identify all test participants,
including any participants who did not complete the test, and all
communications with any participants relating to the test; all raw
data collected from participants enrolled in the test, including any
participants who did not complete the test; source documents for
such data; any data dictionaries; and any case report forms;

D.   All documents referring or relating to any statistical analysis
of any test data, including, but not limited to, any pretest
analysis, intent-to-treat analysis, or between group analysis
performed on any test data; and

E.   All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

Provided, however, the preceding preservation requirement does not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## XIII. ORDER ACKNOWLEDGMENTS

A.   Each Defendant and Relief Defendant, within seven calendar days of entry of this order, must submit to the Commission an

acknowledgment of receipt of this order sworn under penalty of perjury.

B.   For five years after entry of this order, each Individual Defendant, for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct specified in Sections I through VII; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within seven calendar days of entry of this order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which a Defendant delivered a copy of this order, that Defendant must obtain, within thirty calendar days, a signed and dated acknowledgment of receipt of this order.

## XIV. COMPLIANCE REPORTING

Defendants must make timely submissions to the Commission:

A.   One year after entry of this order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.   Each Defendant must: (a) identify the primary physical, postal, and e-mail address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, e-mail, and Internet addresses; (c) describe the activities of each business, including the products, services, or programs offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendants

must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this order; and (e) provide a copy of each order Acknowledgment obtained pursuant to this order, unless previously submitted to the Commission.

2.      Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, e-mail, and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For twenty years after entry of this order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen calendar days of any change in the following:

1.      Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Defendants, and any entity that either Individual Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this order.

2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the

name, physical address, and any Internet address of the
business or entity.

C.   Each Defendant must submit to the Commission notice of
the filing of any bankruptcy petition, insolvency proceeding, or
similar proceeding by or against such Defendant within fourteen
calendar days of its filing.

D.   Any submission to the Commission required by this order to
be sworn under penalty of perjury must be true and accurate and
comply with 28 U.S.C. § 1746, such as by concluding: "I declare
under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct. Executed on:
_____" and supplying the date, signatory's full name, title (if
applicable), and signature.

E.   Unless otherwise directed by a Commission representative in
writing, all submissions to the Commission pursuant to this order
must be e-mailed to DEbrief@ftc.gov or sent by overnight courier
(not the U.S. Postal Service) to: Associate Director for
Enforcement, Bureau of Consumer Protection, Federal Trade
Commission, 600 Pennsylvania Avenue NW, Washington, DC
20580. The subject line must begin: *FTC v. NPB Advertising, Inc.*,
Matter No. X140025.

## XV. RECORD KEEPING

Defendants must create certain records for twenty years after entry of the

order, and retain each such record for five years. Specifically, Corporate Defendants

and Individual Defendants, for any business in which such Individual Defendant,

either, individually or collectively with any other Defendants, is a majority owner or

controls directly or indirectly, must create and retain the following records:

A.   Accounting records showing the revenues from all products,
services, or programs sold;

- 33 -

B.   Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.   Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each provision of this order, including all submissions to the Commission; and

E.   A copy of each unique advertisement or other marketing material, including any web pages, websites, display banners, mobile web banners, mobile web posters, and any interstitial, e-mail, twitter, short message service (SMS), and multimedia messaging service (MMS) advertisements.

## XVI. COMPLIANCE MONITORING

For the purpose of monitoring Defendants' and Relief Defendant's

compliance with this order, including the financial representations upon which part

of the judgment was suspended and any failure to transfer any assets as required by

this order:

A.   Within fourteen calendar days of receipt of a written request from a representative of the Commission, each Defendant and Relief Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this order, the Commission is authorized to communicate directly with each Defendant and Relief Defendant. Defendants and Relief Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant or Relief Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.   The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants, Relief Defendant, or any individual or entity affiliated with Defendants or Relief Defendant, without the necessity of identification or prior notice. Nothing in this order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.   Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVII. RETENTION OF JURISDICTION

Jurisdiction is retained for purposes of construction, modification, and enforcement of this order.

ORDERED in Tampa, Florida, on March 28, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE